## E. A. STROUT *vs.* MARGARET M. LEWIS, Admx.

### Sagadahoc.    Opinion March 4, 1908.

*Fraud.    Burden of Proof.    Class of Proof Required to Establish Fraud.*

When in an action on a written contract the defendant alleges fraud in the inception and execution of the contract, the burden is on the defendant to establish the allegation of fraud by clear and convincing proof.

When in an action on a written contract the defendant alleges fraud in the inception and execution of the contract and the proceeding in effect involves the reforming of the contract on the ground of fraud, then to enable a court in equity to exercise this power, proof of the fraud must be full, clear and decisive, especially where the oral evidence comes mainly from the parties to the suit, and relief will not be granted where the evidence is loose, equivocal or contradictory or in its texture is open to doubt or opposing presumptions.

In the case at bar, *Held:* (1) That the proof fell far short of substantiating the fraud alleged by the defendant.  (2) That the evidence showed good faith rather than fraud on the part of the plaintiff.  (3) That the verdict was so glaringly wrong that it must be set aside.

On motion by plaintiff.   Sustained.

Assumpsit to recover a broker's commission on the sale of real estate, based upon a written contract.   Plea, the general issue with brief statement as follows :

"And for a brief statement of equitable matter of defense to be used under the general issue pleaded, the said defendant says that on the 27th day of June, 1904, the date of the alleged written agreement, and prior thereto, the plaintiff, by one Hutchins his agent, and the defendant, agreed between themselves that if the defendant should place the real estate in question in the plaintiff's hands for sale by him, the said defendant would pay to the said plaintiff the sum of twenty dollars, which was the sum agreed upon to cover the plaintiff's expense in cataloguing and advertising said estate, that said sum of twenty dollars should be payable to the said plaintiff in any event, whether a sale was effected by him, and that there should be no other or further expense or charge to her, the

said defendant, on any account or for any reason or purpose what-soever; that upon these propositions the minds of the parties met and mutually agreed; that on said 27th day of June, 1904, the aforesaid agreement was intended to be reduced to writing, and that the said plaintiff's agent volunteered to so reduce it, and in pursuance thereof wrote in upon a printed form the written agreement which is herein declared on, and handed the same to the said defendant to be signed by her. That she then asked him what said paper was, and that he then and there represented to her that the same was merely a writing to show that the said real estate had actually been placed in the plaintiff's hands for sale and also to provide for the payment of said twenty dollars in accordance with their agreement, and that relying upon said representations the defendant then and there signed the same.

"And the defendant further says that in truth and fact the statement and representations of the plaintiff's agent as to the nature and contents of said paper were false and fraudulent, that the said instrument did not embody the terms of the actual agreement between the parties; that the misrepresentations of the plaintiff's agent were affirmative statements of fact, made with the purpose of inducing the defendant to sign said instrument, and that in reliance thereon she was in fact induced to and did sign the same, that said affirmative statements were false in fact and known to be so by said plaintiff's agent, that they were material representations and that the defendant ever has been and now is ready and willing, and now offers, to pay to the plaintiff the twenty dollars due to him upon the original and only mutual agreement and contract between them."

Tried at the August term, 1907, of the Supreme Judicial Court, Sagadahoc County. Verdict for plaintiff for $20.00 with interest from May 22, 1906. The plaintiff then filed a motion to have the verdict set aside for the following reasons: 1. "Because it is against law and the charge of the Justice." 2. "Because it is against evidence." 3. "Because it is manifestly against the weight of evidence in the case." 4. "Because the damages assessed are insufficient."

The case is stated in the opinion.

Note. Although the title of this case would indicate that the action was against the defendant in a representative capacity, yet the writ, declaration and proceedings show that the suit was against her individually and not as administratrix.

*Williamson & Burleigh*, for plaintiff.

*Staples & Glidden*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

CORNISH, J. This was an action of assumpsit to recover a broker's commission on the sale of real estate, based upon a written agreement dated June 27, 1904.

The defendant pleaded the general issue together with an equitable brief statement, alleging fraud in the inception and execution of the written contract and claiming that under the actual oral agreement, made between the parties, she was to pay the plaintiff twenty dollars when the farm was sold, to cover the expense of cataloguing and advertising, whether the sale was made through the plaintiff's efforts or her own and that there was to be no further charge against her of any kind.

By agreement of counsel the case was submitted to the jury upon these pleadings, they to pass upon the question of fraud and if the defendant's contentions were sustained, the jury were authorized to give the plaintiff a verdict of twenty dollars as if the contract itself had been reformed. This the jury did, their verdict being for twenty dollars with interest from the date of sale. The plaintiff on motion seeks to have this verdict set aside as against the evidence.

The vital question is the proof of deliberately planned and carefully executed fraud on the part of the plaintiff's agent, Hutchins, for on no other hypothesis can the verdict be sustained. The charge is a serious one and the law imposes upon the defendant the burden of substantiating it by clear and convincing proof. "A stricter standard in some such phrase as 'clear and convincing proof' is commonly applied to measure the necessary persuasion for a charge of fraud." Wigmore Ev., sec. 2498. It must be "clear, convincing and satisfactory." *Liberty* v. *Haines, Admr.*, 103 Maine, 182.

In effect the proceeding here, involved the reforming of a written contract on the ground of fraud, and the law is well settled that to enable a court in equity to exercise this power, proof of the fraud must be full, clear and decisive, and relief will not be granted where the evidence is loose, equivocal or contradictory or in its texture is open to doubt or opposing presumptions. *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290 ; *Fessenden* v. *Ockington*, 74 Maine, 123. This rule is especially enforced where the oral evidence comes mainly from the parties to the suit. *Parlin* v. *Small*, 68 Maine, 289.

The proof in this case falls far short of this standard. The only evidence of fraud comes from the defendant herself who, in mechanical and oft-repeated phrase, says that the agent told her "his terms were $20 for advertising and so forth," that "it would cost her $20 whether he sold the place or she did," that he gave her this contract to sign saying that "it was a document to show that she would pay him the $20" and that she did not read it or hear it read but relied upon his statement as to its contents. This testimony is without corroboration. Against it was the clear and positive statement of Mr. Hutchins that the terms of the contract as written were precisely as agreed upon orally, that he read the agreement to the defendant and explained it fully, that she looked on while he was reading, and that she then signed it, after having ample opportunity to examine it further if she had desired. The inherent improbability of the defendant's version strikes one forcibly. She was a woman of mature years and of intelligence and it is highly improbable that she would have signed a contract with a comparative stranger without first learning its contents either by reading it herself or having it read to her. It is equally inconceivable that Mr. Hutchins would have agreed to take property into his hands valued by her at $1200, and negotiate a sale for the paltry sum of $20, a commission of 1 4-5 % on the asking price, including expenses which might naturally consume a large portion if not the whole of that amount, when his usual rates were the same as expressed in the contract. He would be giving his services for nothing.

Nor is it easy to believe such deliberate fraud on the part of Mr. Hutchins, when we consider that he had no personal interest in the matter but was acting for the plaintiff, and that this agency had sold more than one hundred farms in this single county during the past few years. Such conduct would be more easily attributable to a transient promoter than to the proprietor of an established business where experience teaches that honesty is the best policy.

It further appears that the property was finally sold through the efforts of the plaintiff's agent Mr. Morrill, who succeeded Mr. Hutchins in that locality. As the result of previous correspondence, a sister of the purchaser, with two others went to Brunswick and met Mr. Morrill by appointment. He procured a team with driver, and sent them to the defendant's farm with a note to Mr. Jaques, a relative and confidential adviser of the defendant. He quoted $1100 as the selling price, a reduction having been authorized from the original figure. The trade was closed that day between the parties themselves on the premises for $1050, although great care was taken to conceal the fact from Mr. Morrill by both the defendant and the purchaser who during the negotiations asked the defendant the significant and yet not unusual question whether she could sell the place herself.

It was not until some weeks later, when the parties met in Brunswick to make the transfer, that Mr. Morrill accidentally learned of the sale and he then asked for his commission in accordance with the contract. Under the established rule in this State, the plaintiff had fulfilled his part of the agreement and was entitled to his compensation, but this seems to have been one of a class of cases, not too uncommon, where avarice weakens principle, and after a purchaser has been found through the efforts of a broker, the owner, in closing the deal, is willing to make a reduction from the purchase price and stand his chances of avoiding the payment of commissions.

The evidence in this case shows good faith rather than fraud on the part of the plaintiff and his representatives, and the verdict of the jury is so glaringly wrong that it cannot be allowed to stand.

*Verdict set aside.*