EDMUND M. SOCEC ET UX.
*vs.*
MAINE TURNPIKE AUTHORITY, ET AL.

Kennebec.   Opinion, January 30, 1957.

*Sanborn & Sanborn,* for plaintiff.

*George Varney,*
*F. Warren Paine,*
*Drummond & Drummond,*
*Goodspeed & Goodspeed,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, JJ. DUBORD, J., did not sit.

WEBBER, J. Plaintiffs brought this petition for declaratory judgment naming 48 defendants and seeking a determination as to whether certain building restrictions affect the use of plaintiffs' property or should be removed as a cloud upon their title. Those defendants who resist the action first filed an answer. They then moved to strike their answer and filed a demurrer. The motion and demurrer were overruled. Exceptions were allowed and forthwith prosecuted in the Law Court.

The issues presented here are basically procedural. They furnish a rather lucid illustration of the interesting results which sometimes flow from the formidable complexities and the demanding formalities of common law pleading. The issues are twofold. Are these exceptions prematurely before us? Is the nature of the case presented by this petition such as to dictate procedure as at law or as in equity? The procedure to be followed in a petition for declaratory judgment is governed by the "nature of the case." *Sears, Roebuck & Co.* v. *Portland, et al.,* 144 Me. 250. The plaintiffs contend that the case is equitable in its nature. The defendants insist that law procedure should govern. The defendants have used the demurrer and exceptions, as they frankly admit, as a means of ascertaining at the very outset what their procedural vehicle should be to transport them over the long road of litigation. Their choice of a method of ascertainment appears remarkably efficacious, for the present state

of the pleadings presents an interesting paradox. If this cause is equitable in its nature, "ordinarily exceptions will not be entertained in the Law Court before a case in equity comes up for a final hearing." *Munsey, Exec.* v. *Groves*, 151 Me. 200, 202. If that rule is applicable here, these exceptions to the overruling of the demurrer are prematurely before us and must be dismissed. If we dismiss them for that reason, however, we thereby determine that the cause is equitable, and thus indirectly give the defendants an answer to their question. On the other hand, if we entertain the exceptions as not being prematurely brought, we thereby determine that the proceeding belongs on the law side. In either event the defendants will obtain the answer they seek. We think it preferable and far more realistic to answer directly that which we are compelled in any event to answer indirectly. The limitation upon the right of immediate review of interlocutory orders is, however, subject to certain recognized exceptions which are set forth in *Munsey, Exec.* v. *Groves, supra.* "Where, however, it is deemed to be more in the interest of justice that the questions involved should now be determined, and the peculiar character of the questions here presented hardly permits of postponement if any benefit is to be derived from it by the moving party, exceptions may be entertained by the Law Court before final hearing." The statute, R. S. 1954, Chap. 107, Sec. 26, governing the equity practice in such cases has long been deemed directory rather than mandatory upon the theory that the Legislature did not intend that a rigid adherence to the rule should defeat the ends of justice. Obviously the case before us falls within the stated exceptions. It is a matter of paramount importance to the parties to know at the outset whether the petition for declaratory judgment is governed by the rules of procedure which obtain at law or in equity. The right to jury determination of facts is involved. The consequences attending an erroneous conclusion can be disastrous. In the *Sears* case *(supra)*, the

losing party found himself without a right of review by the Law Court because he had misapprehended the "nature of the case." The "interests of justice" are certainly involved and the matter "hardly permits of postponement." We hold therefore that the exceptions are not prematurely presented for consideration even though equity procedure applies.

The "nature of a case" is not always transparently clear, a fact of which the matter before us furnishes an excellent illustration. The petition, briefly summarized, sets forth that plaintiffs acquired about twenty-seven acres of land; that they laid out a part of the tract in lots and recorded a plan; that they reserved a larger portion on which they operated a farm and a commercial enterprise; that they conveyed certain lots, imposing upon the grantees restrictions against commercial use and the like; that part of their remaining property has now been taken by the defendant, Maine Turnpike Authority, by eminent domain, and the presence of the turnpike and traffic circle have changed the nature of the area so as to impair its residential value. The plaintiffs now desire to sell or use some of their remaining property for commercial purposes, but have been threatened by some of the defendants with legal action if they do so. There is no suggestion in the petition that the plaintiffs as grantors ever expressly covenanted or agreed to impose similar restrictions on the land they retained. If the allegations be taken as true, as is proper on demurrer, the restrictions on the use of plaintiffs' property, if they ever came into existence at all, could only have been created by an implied covenant that the land retained by the grantors would be subjected to the same restrictions which were imposed on the grantees. Such implied restrictions have been recognized and enforced in equity under some circumstances by some courts. Ordinarily, courts which so hold deem it essential that there be proof of a general plan or scheme by which the whole tract would be subjected to like restric-

tions. Some courts have denied relief where the grantors reserved the right to release the grantee from the restrictions. The ground of such a holding is that such action by grantors destroys the concept of a general plan or scheme. Some courts have refused to recognize such implied restrictions, pointing out that they are not favored by the law and that the grantee could, if he saw fit, protect himself by demanding an express covenant by the grantor that the restrictions would be applied to property retained. The very practical problems of the title examiner have been considered. Cases touching the point are assembled in two annotations in 60 A. L. R. 1216 and 144 A. L. R. 916. Courts dealing with the subject have given to such implied restrictions such descriptive names as "reciprocal negative easements," "equitable servitudes," and the like. We know of no case in Maine in which the question has arisen.

In determining the "nature of the case" before us, we are not greatly assisted by opposing views as to the nature of the alleged right or estate claimed, whether equitable or legal. Although the right to burden the property of another without express grant therefor would at first thought seem to be equitable in its nature, we cannot overlook the fact that easements may be raised by implication and are enforceable by action at law under some circumstances. A classic example is the right of way implied from necessity. *Whitehouse* v. *Cummings*, 83 Me. 91; *Doten* v. *Bartlett*, 107 Me. 351. Both counsel vigorously contend that the nature of the interest is determinative. They reach, however, very different conclusions. We think there are other more decisive and perhaps less debatable factors in this case which may properly control our decision.

The plaintiffs have named numerous defendants and alleged their common interest in the subject matter of the petition. In the seventeenth paragraph of the petition they have alleged: "That due to the multiplicity of parties, this

proceeding must be brought in equity." The avoidance of a multiplicity of suits has long been considered a ground for equity jurisdiction, even where it is the sole ground. *Ogunquit Corp.* v. *Inhab. of Wells,* 123 Me. 207. As long as 'the rights of all involved depend upon identically the same question, both of law and fact.' *Farmington Village Corp.* v. *Bank, et al.,* 85 Me. 46, 53; *Lockwood* v. *Lawrence,* 77 Me. 297. And even though each individual plaintiff of a large group may have his remedy at law. *Carlton* v. *Newman,* 77 Me. 408. See *York* v. *McCausland,* 130 Me. 245, 252. We think the allegations of the petition raise the same basic question as to all these defendants, as to whether by implication the plaintiffs have restricted the use of their own property, and if so, whether those restrictions have been destroyed by changed conditions.

The petition seeks first to have declared the respective rights of the parties, and secondly to remove the claimed restrictions as a cloud on plaintiffs' title. Proceedings to quiet title may be brought either at law under the provisions of R. S. 1954, Chap. 172, Secs. 48 to 51 inclusive, or in equity under the provisions of Secs. 52 to 55 inclusive of the same chapter. The remedies are concurrent and the mere fact that an alternative remedy at law is provided does not defeat equity jurisdiction in this instance. *Grant* v. *Kenduskeag Creamery, et al.,* 148 Me. 209. Doubt is cast, however, on the right of the petitioners in such a case as the one before us to employ effectively the remedy at law in view of the fact that mortgagees are involved. *Milliken* v. *Savings Institute,* 142 Me. 387; *Poor* v. *Lord,* 84 Me. 98. In any event, the petitioners here have by their pleadings raised issues which are properly determinative by equity procedure and they have clearly announced in their petition their election to avail themselves of equity. As stated above, the seventeenth paragraph of the petition states the plaintiffs' intention to proceed in equity. The eighteenth para-

graph states: "That there is no plain, adequate and complete remedy at law." The third paragraph of the prayers of the petition request: "That any cloud, if any, on the title of the petitioners as to use of their premises above referred to be removed." We conclude that the "nature of the case" is equitable and the petition is governed by the rules of procedure applicable to matters in equity. Defendants' exceptions being grounded exclusively upon the contention that the "nature of the case" is such as to compel procedure as at law, the mandate must be

*Exceptions overruled.*